UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20180-CR-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RICHARD HANSACK

    Defendant.
_____/

### DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

Richard Hansack, by and through undersigned counsel, respectfully submits this sentencing memorandum to assist the Court in fashioning a sentence that is sufficient but not greater than necessary to promote the sentencing goals of 18 U.S.C. § 3553. He respectfully submits that the advisory guideline range is unduly punitive and would create unwarranted sentencing disparities, and that a downward variance to 57 months imprisonment is sufficient but not greater than necessary under the circumstances.

Mr. Hansack's advisory guideline range, as calculated by Probation, is 87 to 108 months imprisonment, and his criminal history category is I. (DE 63, PSI ¶ 56). For the reasons explained below, this range is unduly punitive and would be greater than necessary to serve the important § 3553(a) sentencing goals. Moreover, it would create unwarranted sentencing disparities, as defendants convicted of similar

offenses have received lower sentences in this district—even when held accountable for larger drug quantities and subject to longer advisory sentencing guideline ranges:

- *United States v. Jhonny Caicedo-Ayovi*, Case No. 17-cr-60050-RNS, DE 95: 40-month sentence imposed where the defendant was held accountable for 1,232 kilograms of cocaine and faced an advisory guideline range of 135–168 months imprisonment.

- *United States v. Nelson Apolinar-Erazo, Willington Wilder Gamez Pinto, & Yair Jose Mendosa*, 16-cr-20381-KMW: 48-month sentence imposed where defendants were held accountable for 272 kilograms of cocaine, 49 kilograms of marijuana, and 967.5 grams of hashish.

- *United States v. Eberto Posso Duran*, Case No. 19-20103-cr-KMW: 53-month sentence imposed where defendant was held accountable for 251 kilograms of cocaine and identified as master.

- *United States v. Miguel Bailon Moreira*, Case No. 19-cr-20404-KMW: 52-month sentence imposed where defendant was responsible for 400 kilograms of cocaine and faced a guideline range of 108–135 months.

- *United States v. Francisco Miguel Catagua Castillo*, Case No. 17-cr-20109-UU: 53-month sentence imposed where advisory guideline range was 108–135 months and the offense involved 186 kilograms of cocaine.

- *United States v. Ramon Isauro Alvia Chavez*, Case No. 18-cr-20913-MGC: 57-month sentence imposed where the defendant was held accountable for 1,300 kilograms of cocaine.

- *United States v. John Pena Arroyave*, Case No. 20-cr-20235-UU: 60-month sentence imposed where the defendant was held accountable for between 50 and 150 kilograms of cocaine.

- *United States v. Rodrigo de la Cruz-Zarceno*, Case No. 12-cr-20797-RNS: 60-month sentence imposed where defendant, who was identified as the captain, was responsible for 600 kilograms of cocaine and was subject to an 87–108 month guideline range.

- *United States v. Juan Carlos Quinonez*, Case No. 17-20802-cr-UU: 60-month sentence imposed where defendant was identified as master and held accountable for 256 kilograms of cocaine.

- *United States v. Francisco Jairo Ortiz Valencia*, Case No. 16-cr-20562-RNS: 60-month sentence imposed where defendant was held accountable for 852 kilograms of cocaine.

- *United States v. Darwin Casierra-Cortes*, 17-20806-cr-RNS: 60-month sentence imposed where defendant was responsible for 360 kilograms of cocaine and subject to an advisory guideline range of 108–135 months.

- *United States v. Williams Obando Barrantes*, Case No. 19-cr-20715-KMW: 63-month sentence imposed where defendant identified himself as the master and was held accountable for 50 kilograms of cocaine and 1,600 pounds of marijuana.

- *United States v. Alexander Gonzalez Mosquera*, Case No. 17-20704-cr-DLG: 63-month sentence imposed where defendant was identified as the captain and held accountable for 425 kilograms of cocaine.

In addition to creating unwarranted sentencing disparities, Mr. Hansack's guideline range overstates Mr. Hansack's culpability and is overly punitive. Mr. Hansack has not challenged the legal applicability of the USSG § 2D1.1(b)(3)C) captain enhancement, but does respectfully submit that the enhancement and his guideline range overstate his culpability. Section 2D1.1(b)(3)C) applies to a wide range of conduct and fails to differentiate between people like Mr. Hansack—a poor fisherman with no meaningful authority—and a captain as one would commonly understand the position: someone with specialized training and even licensing in charge of commanding a complex vessel, a person who stands at the top of the nautical hierarchy, with the ultimate responsibility and control over the vessel and everyone on board.[1] Moreover, Mr. Hansack, like his co-defendants, did not own or purchase

---

[1] The government has acknowledged that Mr. Hansack and his codefendants played "comparable" roles to one another during this offense. (DE 67:3; *see also id.* at 4 (All three codefendants are "figuratively, as well as literally, in the same boat, and none is less in it than the others."))

3

the boat or the drugs; he was promised a sum of money for his task, but had no proprietary interest in the criminal undertaking; he did not plan or organize the trip, nor did he exercise any meaningful decision-making authority in connection with the endeavor.

Mr. Hansack's personal background and characteristics are also worthy of consideration, and support a variance. As noted in the PSI, Mr. Hansack's childhood was marked by hunger, poverty, and violence. (PSI ¶ 37). His neighborhood was plagued by crime and, sadly, his home was far from a safe haven. Mr. Hansack recalls in painful detail the abuses he endured from his father and other family members, including being beaten with a wire and being forced to kneel on rocks and rice on a near daily basis. (*Id.* & DE 63-1 at 2). Mr. Hansack also frequently went to bed hungry, having only had enough food for one meal during the entire day. (PSI ¶ 37). Nevertheless—even as a young child—he worried more about his family than himself, "thinking every single day how he could help his mother." (*Id.*) As a result, Mr. Hansack left school in order to work and try to help his family make ends meet. (PSI ¶ 46). As a teenager, he did whatever work he could find—from cleaning yards and landscaping to carrying well water for more well-to-do community members—before becoming a fisherman at 19 years old. (PSI ¶ 48–49).

Unfortunately, financial desperation and misfortune followed Mr. Hansack into adulthood. When Mr. Hansack was approximately 20 years old, his then-partner gave birth to their son. Tragically, the baby passed away in the hospital before Mr. Hansack had the opportunity to hold him for the first time. Starting in 2018, Mr.

4

Hansack's home country of Nicaragua experienced widespread sociopolitical unrest and a worsening economic crisis.[2] In early 2020, Mr. Hansack's mother's home collapsed, displacing Mr. Hansack and his mother, and causing financial distress to an already impoverished family. The onset of the COVID-19 pandemic only made matters worse. With restaurants, factories, and other businesses closed, Mr. Hansack was unable to support himself or his family as a fisherman. He took on whatever odd jobs he could find, but it wasn't enough to make ends meet. Mr. Hansack found himself in a familiar situation: struggling to support himself and his family, and often only having enough for one meal a day. It was from this place of desperation that he made the terrible choice to get involved in this offense.

Mr. Hansack has been in custody for over a year, since his arrest in June 2020. (PSI at page 2).[3] The conditions of his presentence incarceration have been unusually arduous due to the COVID-19 pandemic: he has been subject not only to a heightened risk of infection and severe illness from COVID-19,[4] but also to more restrictive and harsher conditions of confinement. In an attempt to mitigate the spread of the virus within prison and jail walls, the Bureau of Prisons (BOP) implemented lockdown and

---

[2] *See, e.g.*, https://www.worldbank.org/en/country/nicaragua/overview.
[3] Mr. Hansack spent two weeks in the custody of the U.S. Coast Guard, before making his initial appearance in the Southern District of Florida. (PSI at page 2). He respectfully requests that the Court order, in the Judgment, that he receive credit starting on June 3, 2020, the date he was taken into custody by the Coast Guard.
[4] *See, e.g.*, *United States v. Lewis*, 10-cr-60292-Middlebrooks, DE 280 (S.D. Fla. July 20, 2020) ("Courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." (Citations and internal quotation marks omitted)).

modified lockdown conditions during the majority of the pandemic, reducing the already limited programming opportunities at FDC Miami, inmates' movement outside their cells, and restricting their visits and communication with loved ones. At their height, these mitigation efforts—while well-intentioned—qualitatively transformed pretrial detention into something closer to solitary confinement. And while the vaccine has improved conditions for many across the United States, the future is unknown, as the hyper-contagious Delta variant spreads across the United States, COVID cases are increasing dramatically in Florida in particular, and FDC Miami is experiencing a new rise in COVID-19 cases.[5] Additionally, due to his lack of immigration status in the United States, Mr. Hansack will not be eligible for any halfway house time, certain programming, or Earned Time Credits under the First Step Act. And, when he has finished serving his sentence, he will be transferred to immigration custody for removal proceedings, resulting in additional time in detention.

    Mr. Hansack takes full responsibility for his actions and deeply regrets the harm he has caused—especially to his family. He is prepared to accept the consequences of his actions and humbly submits that, under the circumstances, a 57-month sentence is sufficient but not greater than necessary, avoids unwarranted sentencing disparities, and serves the important goals of § 3553(a).

---

[5] This is based on conversations undersigned has had with officials at FDC Miami.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

BY:   *s/ Kate Taylor*
        Kate Taylor
        Assistant Federal Public Defender
        Special Bar No.: A5502484
        150 West Flagler Street, Suite 1700
        Miami, Florida 33130-1556
        Tel:  305-530-7000
        Fax: 305-536-4559
        E-Mail: kate_taylor@fd.org

## **CERTIFICATE OF SERVICE**

    I HEREBY certify that on **July 26, 2021**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        */s/ Kate Taylor*
        Kate Taylor